UNITED STATES of America, Appellee

v.

Terrell GRAVES, Appellant.

No. 09–3082.

United States Court of Appeals,
District of Columbia Circuit.

April 4, 2014.

Roy W. McLeese, III, Esquire, Assistant U.S., U.S. Attorney's Office, Washington, DC, for Appellee.

Neil H. Jaffee, Assistant Federal Public Defender, A.J. Kramer, Federal Public Defender, Office of the Federal Public Defender, Washington, DC, for Appellant.

Before: TATEL, BROWN and KAVANAUGH, Circuit Judges.

### JUDGMENT

This appeal was considered on the record and on the briefs and arguments of the parties. The court has accorded the issues full consideration and has determined they do not warrant a published opinion. *See* D.C. CIR. R. 36(d). For the reasons stated below, it is

**ORDERED AND ADJUDGED** that the judgment of the District Court be affirmed.

On June 10, 2005, Terrell Graves pled guilty to a twenty-count indictment charging him with conspiracy to distribute and possession with intent to distribute cocaine base and phencyclidine (PCP). Three years later, Graves filed a motion to withdraw his plea, alleging ineffective assistance of counsel. The district court denied his motion. On appeal, Graves argues the district court's denial was an abuse of its discretion. And, for the first time on appeal, Graves contends his Sixth Amendment right to counsel was violated in his initial debriefing sessions with the government. Though we acknowledge the government's actions during the initial debriefing sessions raise questions, we find Graves's claims unavailing and affirm the district court's judgment.

We review a district court's determination whether a defendant has shown "a fair and just reason for requesting the withdrawal [of a guilty plea]," FED.R.CRIM.P. 11(d)(2)(B), for an abuse of discretion. *United States v. West*, 392 F.3d 450, 455 (D.C.Cir.2004). A district court abuses its discretion if it bases its ruling on a mistaken application of the law or a clearly erroneous finding of fact. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). We consider three factors in reviewing denials of motions to withdraw: "(1) whether the defendant has asserted a viable claim of innocence; (2) whether the delay between the guilty plea and the motion to withdraw has substantially prejudiced the government's ability to prosecute the case; and (3) whether the guilty plea was somehow tainted." *West*, 392 F.3d at 455. The third factor is the most important. *Id.*

Graves's supposed viable claim of innocence is betrayed by his incriminating testimony at the motions hearing. Graves admitted his involvement in numerous drug transactions and acknowledged that a government videotape depicted him exchanging drugs for money. Additionally, Graves admitted the proffer he signed at the plea hearing was true. In the proffer, Graves agreed that, "as part of th[e] conspiracy," he had acquired "more than 150 grams but less than 500 grams of cocaine"

from his conspirators. *See* 6/10/05 Tr. 22; *see also* App. 58. Furthermore, he admitted he had "agree[d] with others or [had] work[ed] with others . . . to sell or give, and possess with intent to distribute[,] a mixture of substance containing cocaine base." 6/10/05 Tr. 22. Graves's rejoinder is unpersuasive. He claims his "ability to demonstrate his innocence was hampered by the government's delays," Appellant Br. 38, because he "lost the opportunity to investigate the charges against him or pursue a speedy trial," *id.* at 39. But the record amply demonstrates both his awareness of, and opportunity to investigate, the evidence against him, which included photographs and video recordings. *See, e.g.,* 7/16a/09 Tr. 76–78. Furthermore, a lengthy preindictment delay is wholly irrelevant to the Speedy Trial Clause of the Sixth Amendment. *See United States v. Lovasco,* 431 U.S. 783, 788, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977).

Second, we think the prejudice prong is a draw. Permitting Graves to withdraw his plea might substantially prejudice the government's ability to prosecute this case. As Graves concedes, and as the district court found, allowing Graves to "withdraw his guilty plea and proceed to trial might cause the government to expose its confidential informant who 'bought narcotics from [Graves] on eight occasions, who is obviously essential to the proof in this case, [and] who appears on the videos apparently," Appellant Br. 36 (quoting 7/21/09 Tr. 44). But, Graves complains, perhaps with some justification, that had he not been deprived of counsel during a critical stage, things might have been different. However, we note Graves did not refute the government's prejudice claim.

Lastly, Graves's contention that his plea was tainted by his attorney's ineffective representation is without merit. Graves attempts to attack the voluntary and intelligent character of the guilty plea by arguing "he was pressured by his attorney to plead guilty, and [that] his attorney[ ] refus[ed] to investigate the government's case against him or a potential defense." Appellant Br. 40. Each claim is belied by the record. During direct examination at the motions hearing, Graves explained that, after ten months of incarceration, he decided to cooperate "[b]ecause [he] wanted to get home." 7/16a/09 Tr. 29. Graves further explained how he saw cooperation as "just a fast way of getting home instead of . . . really sitting back thinking or weighing [his] options. . . . So [, he] just took the plea." *Id.* at 30. Second, though it is undisputed that, beyond viewing two inculpatory videotapes, Graves's attorney did no further investigation, we think that decision was the product of a reasonable professional judgment. *See Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Due to security concerns, the government would not have revealed to Graves's attorney the identity of its cooperating witness. And Graves's attorney testified that "until you ascertain the identity of the [government] informant" it would be "fairly difficult" to investigate the type of "informant buy case[ ]" with which Graves was involved. 7/16p/09 Tr. 58. Graves, meanwhile, did not suggest to his attorney the names of any other persons to interview or investigate. *Id.* at 9. Additionally, in the later phase of cooperation discussions, his attorney's insistence on disclosure of the confidential informant may have ended Graves's chance of earning a departure from the mandatory twenty years of imprisonment he faced. Conducting a more thorough investigation may have raised the suspicions of his cohorts and rendered his cooperation useless.

Graves fares no better on his Sixth Amendment claim. The parties expend much energy dueling over whether Graves

was unrepresented by counsel during his first four debriefings with the government. We need not wade into the morass. Assuming Graves was without counsel during the first four debriefings, he forfeited his Sixth Amendment claim by subsequently entering a guilty plea. A guilty plea is "a break in the chain of events which has preceded it in the criminal process." *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). Thus, "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Id.* Instead, "[h]e may only attack the voluntary and intelligent character of the guilty plea," *id.*, "through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases," *Blackledge v. Perry*, 417 U.S. 21, 30, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974). Each case Graves cites to the contrary is distinguished on the basis that the Sixth Amendment violation occurred at the plea hearing phase of the prosecution. *See Iowa v. Tovar*, 541 U.S. 77, 82–85, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004); *Moore v. Michigan*, 355 U.S. 155, 156, 78 S.Ct. 191, 2 L.Ed.2d 167 (1957); *Palmer v. Ashe*, 342 U.S. 134, 135, 72 S.Ct. 191, 96 L.Ed. 154 (1951); *House v. Mayo*, 324 U.S. 42, 45–46, 65 S.Ct. 517, 89 L.Ed. 739 (1945); *Williams v. Kaiser*, 323 U.S. 471, 472–73, 65 S.Ct. 363, 89 L.Ed. 398 (1945); *Walker v. Johnston*, 312 U.S. 275, 279, 61 S.Ct. 574, 85 L.Ed. 830 (1941). Graves entered his guilty plea while represented by his attorney, testifying that he had ample opportunity to discuss and review the case with his attorney and that he was satisfied with his work and representation. For the foregoing reasons, we affirm the district court's judgment.

Pursuant to D.C. CIR. R. 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* FED. R.APP. P. 41(b); D.C. CIR. R. 41(a)(1).